## APPEAL OF STRUTHERS-WELLS COMPANY.

Docket 3943.    Decided July 21, 1926.

The evidence of record does not prove such an abnormality of invested capital or income as warrants the determination of tax liability under section 328 of the Revenue Act of 1918.

*Arthur J. Farber, C. P. A.,* for the petitioner.
*Ward Loveless, Esq.,* for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits tax for the years 1917 and 1918 of $14,444.15 and $4,080.33, respectively.   The only allegation of error is that the Commissioner has refused to determine tax liability under the provisions of section 210 of the Revenue Act of 1917, and section 328 of the Revenue Act of 1918 for the years 1917 and 1918, respectively.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation with its principal office at Warren.   It was incorporated August 14, 1902, and acquired the assets and assumed the liabilities of the partnership of Struthers-Wells Co. as of January 1, 1902.   Included in the assets purchased were items of property and plant which were entered on the books of the taxpayer corporation as of January 1, 1902, at the following valuations:

| | |
|---|---|
| Real estate | $175,317.72 |
| Tools and machinery | 203,081.76 |
| Patterns | 135,231.25 |
| Drawings | 14,901.07 |
| | 528,531.80 |

These values were allowed by the Commissioner in the computation of the taxpayer's invested capital for the years 1917 and 1918.

The sales and the book profit or loss from the operations of the taxpayer for the years 1902 to 1911, inclusive, were as follows:

| Year | Sales | Book profit or loss | |
|---|---|---|---|
| 1902 | $528,824.79 | Loss | $38,553.38 |
| 1903 | 639,510.30 | Profit | 32,721.79 |
| 1904 | 573,416.38 | do | 15,153.66 |
| 1905 | 775,621.07 | Loss | 19,872.64 |
| 1906 | 655,920.94 | Profit | 8,940.55 |
| 1907 | 860,970.07 | do | 59,481.76 |
| 1908 | 490,440.33 | Loss | 41,445.16 |
| 1909 | 562,740.85 | do | 46,290.27 |
| 1910 | 667,961.84 | Profit | 10,390.83 |
| 1911 | 651,784.65 | do | 64,459.29 |

A certain agreement was entered into on June 28, 1912, between the stockholders of the taxpayer and certain of its employees, which agreement remained in effect until December 20, 1913. This agreement was to give effect to an employees' profit-sharing plan. The points covered by it are briefly as follows:

1. The Struthers-Wells Co. shall be reorganized.

2. The capitalization consisting of 20,000 shares of common capital stock, par value $25 per share, total par value $500,000, shall be increased to $600,000 par value and divided into 3,000 shares each of common and preferred capital stock, par value $100 per share.

3. The stockholders shall transfer to certain employes of the company all of the common stock, consisting of 5,000 shares, par value $100 each, subject to certain terms and conditions.

4. The principal terms and conditions under which these employes shall receive this stock are as follows:

(a) There shall be transferred to the employes each year stock in an amount proportionate to the reduction of the indebtedness of the company, which as of October 31, 1911, amounted to $289,500.

(b) Additions and betterments to plant and equipment in excess of the annual and special depreciation charges shall be considered as applying against the reduction of the indebtedness of the company.

(c) The earnings of the company shall be distributed in the order shown below:

Payment of dividends on preferred stock for the current year.

$20,000.00, or any part thereof, as may be decided by the Board of Directors to be available, to be used to retire the outstanding indebtedness.

Necessary and advisable enlargements and betterments of the plant.

Payments of dividends on common stock, such dividends shall not exceed 3% in any one year.

Further retirement of outstanding indebtedness.

(d) If any of the employes to whom stock had been allotted ceased to be identified with the business of the company, the stock, which had been allotted to him and not transferred, shall become treasury stock and also the company shall have the right to purchase the stock held by such employe at $50.00 per share.

(e) None of the stock transferred to employes under this agreement shall be sold by them without first giving the company the privilege of purchasing the same under the terms as outlined under section (d).

(f) Payments of dividends on common stock shall be in accordance with the provisions of section (c) and such dividends shall be paid upon the stock allotted rather than the stock transferred.

(g) Preferred and common capital stock shall have equal voting power.

(h) The salaries of the employes to whom stock is allotted shall not be increased during the period that this agreement is in force, over or above the amounts of the salaries at this date as fixed by the Board of Directors of the company, without the consent of the majority interest of the stockholders of the company.

(i) When all of the outstanding indebtedness shall have been liquidated in accordance with and subject to the conditions outlined in the foregoing, all of the preferred stock shall be retired or cancelled, and there shall be issued in lieu thereof to the owners in full payment of the same an equal amount of common stock, after which all stock of the company shall share alike in the distribution of dividends and be treated the same in all other respects.

The Commissioner determined the taxpayer's liability to profits tax for the years 1917 and 1918 under the provisions of section 201 of the Revenue Act of 1917 and section 301 of the Revenue Act of 1918. In a letter addressed to the taxpayer on February 19, 1924, the Commissioner stated that the claim of the taxpayer for relief under section 210 of the Revenue Act of 1917 had been considered and relief denied for the reason that the excess-profits tax was not in excess of the average excess-profits tax paid by a group of companies which he considered comparable with the taxpayer. The taxpayer sought relief from the excess-profits tax determined for the year 1918, under the provisions of section 328 of the Revenue Act of 1918, but the request for such consideration was denied.

Prior to the date of the contract entered into on June 28, 1912, between the stockholders of the taxpayer and certain of its employees, the taxpayer had paid no dividends upon its stock and was making little money. For 1912 and for subsequent years the taxpayer has had a net gain each year and has had large earnings for the years subsequent to 1914. Of the 15 employees who signed the contract in 1912, all except one, who died in 1914, were still in the employ of the company in 1918.

### OPINION.

SMITH: At the hearing of this appeal the taxpayer offered in evidence a copy of an appraisal made by certain appraisal engineers as of February 1, 1902, which appraisal was made on or about that date. The business was then being conducted as a partnership and the appraisal was for the purpose of determining the values of the assets as of the date of incorporation. The books of account were to some extent changed to represent the values determined by the appraisal engineers. The appraisal offered for the purpose of showing that the invested capital of the Struthers-Wells Co. was not fully stated upon the taxpayer's books of account in 1902—as indicating that there was in the possession of the company statements made by persons whom they considered to be competent to make such statements showing a higher value. The Commissioner objected to the introduction of the appraisal for the purpose of showing the value of the assets in 1902, on the ground that the persons making the appraisal were not before the Board and therefore not subject to cross-examination, and his objection to the introduction of the appraisal for the purpose of proving a value of the assets in 1902 in excess of the amount placed upon the books of account by the officers in 1902 was sustained. The only other evidence introduced by the taxpayer in support of its claim that abnormalities in invested capital and income existed for the years 1917 and 1918 was a copy of an agreement entered into between the then stockholders of the company and cer-

tain of its employees on June 28, 1912, which agreement has been briefly summarized in our findings of fact, and also the testimony of the person who was vice president and general manager of the corporation during the years 1917 and 1918. He testified that, in his opinion, the profits of the company during the years 1917 and 1918 were largely attributable to the contract and its effect upon the stockholder employees.

The taxpayer argues that the Commissioner admitted abnormalities for the year 1917 by the fact that he considered its claim to relief for that year under section 210 of the Revenue Act of 1917, when the excess-profits tax was only 24.9 per cent of the taxable income; that the same abnormalities of invested capital and income existed for the year 1918, when the profits tax was 58.1 of the taxable net income.

So far as the year 1917 is concerned, the taxpayer has submitted no evidence which would tend to prove that the Secretary of the Treasury was unable satisfactorily to determine its invested capital for the year 1917. That is the only basis for affording the computation of tax liability under section 210 of the Revenue Act of 1917. Upon the record, the refusal of the Commissioner to grant any relief under section 210 of the Revenue Act of 1917 to this taxpayer in respect of its tax liability for 1917 must be approved.

In our opinion the evidence adduced before the Board does not prove the taxpayer's claim to such an abnormality of invested capital and income for 1918 as entitled it to consideration under the relief provisions of the taxing statutes. It is true that the profits tax for the year 1918 upon this corporation was onerous. But this was the case with a great many corporations. They simply earned a large net income upon their invested capital. The statute provides that this condition alone is not enough to warrant relief under the provisions of section 328 of the Revenue Act of 1918.

> *The deficiencies in profits-tax for the years 1917 and 1918 are $14,444.15 and $4,080.33, respectively. Order will be entered accordingly.*